**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-386-JLK-KMT

RONALD J. JANSSEN, Individually and on Behalf of all Others Similarly Situated,

    Plaintiff,

v.

OPPENHEIMERFUNDS, INC., et al.,

    Defendants.

Civil Action No. 09-cv-525-JLK-KMT

HELGA PETERS, Individually and on Behalf of all Others Similarly Situated,

    Plaintiff,

v.

OPPENHEIMERFUNDS, INC., et al.,

    Defendants.

**MOTION OF THOMAS GOODMAN AND ERROL GLYNN O'STEEN
FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL**

## PRELIMINARY STATEMENT

Class members Thomas Goodman ("Goodman") and Errol Glynn O'Steen ("O'Steen") respectfully move this Court, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order: (i) appointing Goodman and O'Steen as Lead Plaintiff of a class of all persons or entities who purchased or held shares of the Oppenheimer Champion Income Fund ("Champion Fund" or the "Fund") offered by OppenheimerFunds, Inc. ("OppenheimerFunds"); (ii) approving Goodman and O'Steen's selection of Labaton Sucharow LLP as Lead Counsel for the Class and The Shuman Law Firm as Liaison Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

This case alleges that OppenheimerFunds and certain of its officers and directors (collectively, "Defendants") violated the federal securities laws by issuing materially false and misleading statements concerning the Fund's risk exposure. The above-captioned actions (collectively, the "Action") are brought on behalf of all persons who purchased or held shares of the Fund during the period August 7, 2006 to December 9, 2008, inclusive (the "Class Period"), to recover damages caused by Defendants' violations of the federal securities laws and state law breach of contract arising out of Defendants' material omissions, misrepresentations and scheme to defraud (the "Class").

Pursuant to the PSLRA, the Court should appoint the "most adequate plaintiff" to serve as Lead Plaintiff in the action. 15 U.S.C. § 77z-1(a)(3)(B)(i). In that regard, the Court should determine, among other things, which movant has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C.

§ 77z-1(a)(3)(B)(iii)(I).  Goodman and O'Steen, a group with a relationship that pre-dates the determination of their financial interest, originally moved for appointment as lead plaintiff together, with Goodman having suffered losses of $560,576 and O'Steen having suffered losses of $466,994.  *See* Certifications and Loss Analyses, Exs. A and B to the Declaration of Alan I. Ellman, filed concurrently herewith (the "Ellman Decl.").  Subsequently, Goodman and O'Steen decided to join forces with Philip Kunz ("Kunz") and Stephen Swendiman ("Swendiman") of the Champion Investor Group, represented by Hagens Berman Sobol Shapiro LLP, to advance the interests of the Class in the prosecution of the litigation.  *See* Dkt. No 46.[1]

On June 24, 2009, the Court denied all of the pending lead plaintiff motions without prejudice.  At the July 15, 2009 Status Conference (the "July 15 Conference"), the Court invited new lead plaintiff motions from groups of individuals who had "some kind of connection or affinity before the determination of the financial interest exists."  *See* July 15 Conference Transcript 107:15-16.  After the July 15 Conference, Messrs. Goodman and O'Steen communicated personally with Messrs. Kunz and Swendiman, and the latter agreed to support the motion of Goodman and O'Steen.[2]  *See* Declaration of Thomas Goodman and Errol Glynn O'Steen in Support of Their Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Goodman and O'Steen Decl.") at ¶ 6.

Based on the certifications and loss analyses already submitted to this Court on April 14, 2009 by the lead plaintiff movants, Goodman and O'Steen have the largest losses of any group of movants within the meaning of the Court's statements at the July 15 Conference ($1,027,570),

---

[1] Unless otherwise noted, all docket citations are to the *Janssen* action, No. 09-cv-0386.

[2] Kunz and/or Swendiman may be proposed as class representatives at the class certification stage.

with Goodman possessing the single largest loss ($560,576) of any timely movant.[3]  Goodman and O'Steen also satisfy the requirements of Rule 23, as their claims are typical of the other members of the putative class, and they will fairly and adequately represent the class.

Goodman and O'Steen are both former employees of Xerox Corporation.  *See* Ellman Decl. Ex. C, Goodman and O'Steen Decl. ¶ 2.  They share a common Investment Consultant, who oversaw their investment in the Fund.  *Id.*  Following disclosure of the events underlying this Action, their Investment Consultant contacted Labaton Sucharow about their participation in the Action.  *Id.*  The Investment Consultant discussed with Goodman and O'Steen the possibility of serving as Lead Plaintiff in the Action, and Goodman and O'Steen then directed their Investment Consultant to ask Labaton Sucharow attorneys to contact them about serving as Lead Plaintiff in this lawsuit.  *Id.*  In addition to this relationship, Goodman and O'Steen submitted a joint declaration emphasizing their commitment to serve the interests of the Class and to oversee their counsel's prosecution of the litigation.  *See* Ellman Decl. Ex. D, Joint Declaration of Champion Income Fund Investor Group, Tom Goodman, and Errol Glynn O'Steen ¶¶ 6-7, 12, Dkt. No. 38.

Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v), the Lead Plaintiff shall select and retain counsel to represent the class, subject to court approval.  Goodman and O'Steen's selection of Labaton Sucharow as Lead Counsel and the Shuman Law Firm as Liaison Counsel should be approved because, as demonstrated below, the firms have successfully litigated securities class actions for decades and have the requisite experience and resources to prosecute this Action.

---

[3] *See* Certification of Champion Income Fund Investors Group (Dkt. No. 27); Certification of Individual Investor Group (Dkt. No. 20, Estner v. Oppenheimer Funds, Inc., No. 09-cv-01327 (2009)); Certification of Jairo and Geraldine Mejia (Dkt. No. 26); Certification of Claire Slotnick (Dkt. No. 29, Estner v. Oppenheimer Funds, Inc., No. 09-cv-01327 (2009)).

Counsel for Goodman and O'Steen certifies that, in accordance with D.C. Colo. L. R. 7.1A, counsel for the plaintiffs who previously filed a motion for appointment of lead plaintiff for the Core Bond Fund have been contacted prior to the filing of the instant motion. Such counsel expressed support for Goodman and O'Steen's motion. Defendants take no position on Dr. Pattison's motion, but reserve their right to respond.

## ARGUMENT

### I.   GOODMAN AND O'STEEN SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.   The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Business Wire*, a "widely circulated national business-oriented . . . wire service," *see id.*, on February 13, 2009. *See* Ellman Decl. Ex. E. This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be April 14, 2009. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in these Actions. 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15

U.S.C. § 77z-1(a)(3)(B)(i).  In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii).

**B.     Goodman and O'Steen are "The Most Adequate Plaintiff"**

**1.     Goodman and O'Steen's Motion is Timely**

Goodman and O'Steen move this Court to be appointed Lead Plaintiff and have timely filed the instant motion.  Goodman and O'Steen's original motion was timely filed because it was filed on April 14, 2009, within 60 days of the publication of the notice on February 13, 2009.  Their renewed motion is filed within the Court-set deadline of August 7, 009.

**2.     Goodman and O'Steen Have the Largest Financial Interest in the Relief Sought By the Class**

Numerous district courts around the country determine the "largest financial interest" utilizing four factors: (1) the number of shares of the subject securities purchased; (2) the net number of securities purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended by the movant to acquire those securities; and (4) the approximate losses suffered by the movant.  *See, e.g., In re Cendant Corp. Litig.,* 264 F.3d 201, 262 (3d Cir. 2001); *Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-8538, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008); *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 440 (S.D. Tex. 2002); *Lax v. First*

5

*Merchants Acceptance Corp.*, No. 97-c-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999); *see also* July 15 Conference transcript 107:4-10.

Based upon these factors, Goodman and O'Steen believe they have the largest financial interest in this litigation:

**Total Shares Purchased**:   Goodman purchased 102,517 total shares and O'Steen purchased 71,893 total shares, for a combined 174,410 total shares purchased. *See* Certifications and Loss Analyses, Ellman Decl., Exs. A and B.

**Net Shares Purchased**:   Net shares purchased equals the number of shares purchased less the number of shares sold during the class period. Goodman purchased 98,153 net shares and O'Steen purchased 62,861 net shares, for a combined 161,014 net shares. *See id.*

**Net Funds Expended**:   The net funds expended on the subject securities during the Class Period equals the difference between the total funds spent to purchase those securities and the funds received from sales of those securities. Goodman expended $720,791 in net funds and O'Steen expended $569,602 in net funds (for a combined $1,290,392) to purchase Champion Fund shares during the Class Period. *See id.*

**Approximate Losses:**   Goodman suffered losses of $560,576 and O'Steen suffered $466,994, for combined losses of $1,027,569 when calculated using both the last-in-first-out and first-in-first-out methods of loss calculation. *See id*.

In sum, Goodman and O'Steen believe they have the largest financial interest and should be appointed Lead Plaintiff in this Action.

6

### 3. Goodman and O'Steen Satisfy the Requirements of Rule 23

According to 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Ribozyme Pharms. Sec. Litig.*, 192 F.R.D. 656, 658 (D. Colo. 2000) ("In deciding a motion to serve as lead plaintiffs, I limit my inquiry to these final two prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiffs move for class certification."); *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351, 2008 WL 4298316, at *2 (D. Colo. Sept. 17, 2008); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, 'a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (citation omitted).

As detailed below, Goodman and O'Steen satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff. Goodman and

7

O'Steen have claims that are typical of those of other Class Members and they can adequately serve as Lead Plaintiff.

### (a) Goodman and O'Steen's Claims are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Crocs*, 2008 WL 4298316, at *2; *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Daniels v. City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-civ-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the claims of Goodman and O'Steen are identical to, and non-competing and non-conflicting with, the claims of the other Class members. Goodman and O'Steen purchased Champion Fund shares during the Class Period when prices were artificially inflated as a result of Defendants' misrepresentations and omissions, and thus, both Goodman and O'Steen and the Class Members suffered damages as a result of these purchases. Therefore, Goodman and O'Steen's claims, like the claims of each member of the class, "arise from the same event or course of conduct." *Ribozyme*, 192 F.R.D. at 659. Goodman and O'Steen are not subject to any unique or special defenses. Thus, Goodman and O'Steen meet the typicality requirement of Fed. R. Civ. P. Rule 23 because their claims are the same as the claims of the other Class members.

### (b) Goodman and O'Steen Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 77z-1(a)(3)(B).

Goodman and O'Steen's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Goodman and O'Steen and the other Class members, but Goodman and O'Steen have a significant, compelling interest in prosecuting the Action to a successful conclusion based upon the very large financial loss of approximately $1,027,569 that they have suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with Goodman and O'Steen's identical interests with the members of the Class, demonstrate that they will vigorously pursue the interests of the Class. In addition, Goodman and O'Steen have selected as lead counsel a law firm to represent them and the Class that is highly experienced in prosecuting securities class actions.

In sum, because of Goodman and O'Steen's common interests with the Class members, their clear motivation and ability to vigorously pursue the Action, and their competent counsel, Goodman and O'Steen meet the adequacy requirement of Rule 23. Since Goodman and O'Steen have sustained the largest amount of losses from Defendants' alleged wrongdoing and meet both the typicality and adequacy requirements of Rule 23, Goodman and O'Steen are the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), and they should be appointed as such to lead the Action.

## II. THE COURT SHOULD APPROVE GOODMAN AND O'STEEN'S CHOICE OF LEAD AND LIAISON COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Goodman and O'Steen have selected Labaton Sucharow to serve as Lead Counsel for Lead Plaintiff and the Class. Labaton Sucharow has had a leading role in numerous important actions on behalf of defrauded investors. For example, Labaton Sucharow served as lead counsel in the *Waste Management* securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time. *See* Labaton Sucharow Firm Resume, Ellman Decl. Ex. F; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against American International Group, HealthSouth, Countrywide, Bear Stearns, Fannie Mae, and others.

Goodman and O'Steen have also selected The Shuman Law Firm to serve as Liaison Counsel. Mr. Kip Shuman, principal of The Shuman Law Firm, has served as both lead and liaison counsel in a number of federal securities class actions litigated before this Court.[4] *See* The Shuman Law Firm Resume, Ellman Decl. Ex. G. Moreover, The Shuman Law Firm has

---

[4] *See In re Samsonite Corp. Sec. Litig.*, Case No. 98-cv-1878 (Kane, J.) (co-lead counsel); *Rasner v. FirstWorld Commc'n Inc.*, Case No. 00-cv-1376 (Kane, J.) (co-lead counsel); *Angres v. Smallworldwide PLC*, Case No. 99-cv-1254 (Kane, J.) (co-lead counsel); *In Re Rhythms Sec. Litig.*, Case No. 02-cv-0035 (Kane, J.) (liaison
*(continued ... )*

already performed important liaison counsel tasks in this litigation. This Court ordered plaintiffs' counsel to attempt to organize themselves in an efficient manner. *See* Dkt. No. 52. After receipt of the Court's Order, The Shuman Law Firm took the lead by facilitating communications amongst plaintiffs' counsel, including convening and moderating a conference call on July 2, 2009, which was attended by over 40 plaintiffs' counsel, *see* Dkt. No. 53, as well as a follow-up conference call on July 7, 2009. These calls allowed plaintiffs' counsel to discuss, in a single forum, the organization of these actions in a manner consistent with this Court's Order. In addition, The Shuman Law Firm drafted Plaintiffs' Joint Position Statement, *see* Dkt. No. 57, circulated it for comment, compiled the three proposals and ensured its timely filing.[5] By voluntarily initiating these important tasks in this litigation pursuant to the Court's Order, The Shuman Law Firm has demonstrated its qualifications and commitment in being appointed liaison counsel.

This Court may be assured that in the event that Goodman and O'Steen's motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, Goodman and O'Steen respectfully request that this Court enter an order: (1) appointing Goodman and O'Steen as Lead Plaintiff in the Action; (2) approving Goodman and O'Steen's selection of Labaton Sucharow LLP as Lead Counsel for the

---

*( … continued)*
counsel); and *Rivera, et al v. MatchLogic, Inc., et al*, Case No. 00-cv-02289 (Kane, J.) (liaison counsel) (consumer fraud class action).

[5] Labaton Sucharow supported the Three Group Plan presented to the Court in Plaintiffs' Joint Proposal filed July 10, 2009, and still believes substantial efficiencies could be achieved through that case management plan, although it recognizes that another plan, or a hybrid of the proposals presented to the Court, may be implemented by the Court. Goodman and O'Steen's instant motion is not contingent on the adoption of any particular plan.

Class and The Shuman Law Firm as Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

Dated: August 7, 2009                              Respectfully submitted,

**THE SHUMAN LAW FIRM**

  */s/*  Kip B. Shuman
Kip B. Shuman
Rusty Glenn
885 Arapahoe Avenue
Boulder, Colorado  80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886
E-Mail: kip@shumanlawfirm.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Mark S. Arisohn
Alan I. Ellman
Benjamin D. Bianco
Stefanie J. Sundel
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Errol Glynn O'Steen and Thomas Goodman  and Proposed Lead Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Sean R. Matt
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Attorneys for Phillip Kunz and Stephen Swendiman*

12

## **Certificate of Service**

      I hereby certify that the foregoing was filed with this Court on August 7, 2009 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

                                                                                      s/ Rusty E. Glenn
                                                                                        Rusty E. Glenn