IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **09-cv-386-JLK-KMT** (consolidated with **09-cv-525-JLK-KMT**)

In re Oppenheimer **Champion Fund** Securities Fraud Class Actions

## ORDER RE THIRD PARTY MOTION TO ENFORCE SETTLEMENT

Kane, J.

These consolidated federal securities fraud class actions involving Oppenheimer's Champion and Core Bond Funds were the subject of a nationwide settlement in May 2011. After lengthy proceedings in which notice was published and class members were afforded the opportunity to opt out of the approved settlement, Final Judgment (Doc. 169) entered on September 30, 2011. At the time, Champion Fund class member Patricia Newton was engaged in a FINRA[1] arbitration with the securities firm and broker-dealer who had recommended the investment of the Newtons' retirement savings in Champion Fund. She did not opt out of the class settlement, however, believing that the suitability and individual liability claims she was bringing against the broker were wholly distinct from the Prospectus-based claims being brought on behalf of the class. On the advice of counsel, Mrs. Newton only intended to file a Proof of Claim under the settlement for any shares that passed the "suitability" test in arbitration. Given

---

[1] The Financial Industry Regulatory Authority (FINRA) is the self-regulatory organization responsible for the oversight of securities firms and brokers doing business with the public and the successor to the NASD. *Thomas v. Metropolitan Life Ins. Co.*, 2009 WL 2778663, at *6, n. 12 (W.D.Okla.)(cited in *Gilmore v. Brandt*, 2011 WL 5240421, *5 (D.Colo.)(Blackburn, J.)).

the continued pendency of the arbitration, she filed no Proof of Claim.

Arbitration respondents Frank Ammirato and National Planning Associates, Inc. (NPA) now as third parties under Fed. R. Civ. P. Rule 71 to enforce the class action settlement and enjoin further prosecution of Mrs. Newton's FINRA claims. Respondents contend Newton's FINRA claims were extinguished by the broad release negotiated by Oppenheimer on behalf of the Fund and broker-dealers such as themselves. *See* Mot. to Enforce Settlement and Final Jm. and Order of Dismissal Dated September 30, 2011 (Doc. 177). Mrs. Newton denies her FINRA claims fall within the scope of the Release but argues the question is one for the arbitrators to decide in any event. Ammirato and NPA argue jurisdiction over the issues raised in their Motion rests exclusively with me.

I am persuaded by the Second Circuit's treatment of a similar issue in *In re American Express Fin. Advisors Sec. Litigation*, __ F.3d __, 2011 WL 5222784 (2d Cir. (N.Y.) Nov. 3, 2011), that the scope of the Champion Fund class action Settlement Agreement and Release is for me to ascertain in the first instance. After careful review, I grant NPA and Ammirato's Motion in part and deny it in part. Claims premised on Ammirato's "reckless and unsuitable" recommendation to invest the high-risk Champion Fund and the resulting loss of their retirement nest-egg arise out of the identical factual predicate as the settled conduct and were released by the class settlement. These include the suitability claim as well as any claims based on Ammirato's conduct in recommending the investment and failing to disclose the associated risks. Mrs. Newton's claims premised on conduct separate and distinct from the original investment decision, however, such as Ammirato's alleged failure to heed the Newtons' stop-loss orders and forgery in "updating" the Newton's Account Form to change their "low" risk tolerance to

"high," do not arise out of the identical factual predicate as the settled claims and are not barred by the Release. Movants' arguments regarding the viability of the Newtons' forgery claim under New Jersey law are for FINRA to determine.

*Discussion.*

<u>The question of whether the Newtons' arbitration claims were released is for the Court, not the arbitrators.</u>

On the question of whether it is for me or for the arbitrators to determine whether the Newmans' arbitration claims survive the class action settlement, I agree the responsibility is mine. In *American Express*, the Second Circuit interpreted a similar release to the one at issue and held that under applicable Supreme Court authority, the question of whether class members' FINRA claims survived a securities fraud class action settlement was a "question of arbitrability" for judicial determination rather than a "gateway matter[] . . . presumptively reserved for the arbitrator." __ F.3d at __, 2011 WL 5222784 at *12- *13, *15 (citing *Howsam* and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-82 (1994)). Where, as here, a settlement agreement goes beyond mere disposition of a class action to govern rights and obligations after settlement, a court's retention of jurisdiction over the surviving agreement requires that the court consider whether arbitration rights survive. *See id.* Having retained "continuing and exclusive jurisdiction over all matters related to the . . . enforcement and interpretation of the Stipulation," *see* Final Jm. & Order of Dismissal (Doc. 177-4) at ¶ 21, it is for me to consider whether Mrs. Newton's FINRA claims fall within the Judgment's definition of "Released Claims." Mrs. Newton's countervailing argument that it is for the arbitrators to determine the scope of the Champion Fund release based on federal policy favoring arbitration and the fact NPA and Ammirato have consented to arbitration are unpersuasive. Agreements to

arbitrate may be altered – or even revoked – and it is clear the Champion Fund Settlement Agreement "amended the contours of the parties' agreement to arbitrate all disputes between them before FINRA arbitrators." *American Express*, __ F.3d at __, 2011 WL 5222784 at *15 (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998)). Under that Agreement, the arbitration rights of class members and released Defendants have been modified to exclude claims that have been released.

<u>The Release bars arbitration claims based on the "identical factual predicate" as settled claims</u>.

Paragraph 2(b) of the Champion Fund Settlement Agreement (Doc. 177-2) releases "any and all Released Claims against each and every one of the Released Defendant Parties . . . ." Paragraph 1(y) defines "Released Defendant Parties" to include "broker-dealers or financial advisers of any Class Member." Paragraph 15 of the Final Judgment incorporating the Settlement Agreement prohibits any class member, "other than a Class Member who validly and timely elected to be excluded from the Class," from commencing or "continu[ing] . . . any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the [Settlement Agreement]" and "permanently enjoin[s]" them from doing so. (Doc. 169). Mrs. Newton does not dispute that by failing to opt out of the class action settlement, she is bound by these terms. Nor does she dispute that NPA and Ammirato fall within the definition of "Released Defendant Parties." She simply argues that her FINRA arbitration claims do not qualify as "Released Claims" under the terms of the Settlement Agreement.

"Released Claims" under the Agreement are defined as:

[A]ll claims, demands, rights, actions, suits, or causes of action of every nature

> and description, whether known or unknown (including Unknown Claims, as defined herein), whether the claims arise under federal, state, statutory, regulatory, common, foreign or other law, whether foreseen or unforeseen, and whether asserted individually, directly, representatively, derivatively, or in any other capacity, that the Releasing Plaintiff Parties: (1) asserted in the Complaint or the Action as against the Released Defendant Parties; (2) *have asserted, could have asserted, or could assert in the future, in any forum against the Released Defendant Parties that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, or statements set forth in the Complaint or at issue in the Action*; or (3) have asserted, could have asserted, or could assert in the future relating to the prosecution, defense, or settlement of the action as against the Released Defendant Parties.

*Id.*, ¶ 1(x)(emphasis mine). That class action settlements may require class members to release not only the claims asserted in the settled action but also any current or future claims based on the same operative facts is well established. As the Supreme Court has observed, in order to accomplish a full and effective settlement and thereby "prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the 'identical factual predicate' as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Matsushita Electric Indus. Co. v. Epstein*, 516 U.S. 367, 376-77 (1996) (quoting *Nottingham Partners v. Dana*, 564 A.2d 1089, 1106 (Del. 1989) and *TBK Partners v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). The Champion Fund Settlement Agreement and Release were approved on that basis in my September 30, 2011, Order.

The question of whether and which of Mrs. Newton's FINRA claims may have survived the Champion Fund Settlement turns on the identity of their respective operative facts:

> [W]here there is a realistic identity of issues between the settled class action and the subsequent suit . . . the situation is analogous to the barring of claims that could have been asserted in the class action. Under such circumstances the paramount policy of encouraging settlements takes precedence.

*TBK Partners* at 461. That those facts are presented to support relief under different legal theories does not matter; what is to be prevented is the "relitigation of settled questions at the core of a class action." *Id.* at 460. Based on my knowledge of the Champion Fund litigation and my review of Mrs. Newton's FINRA claims, there is, indeed, an identity of operative facts underlying them both that impacts the original agreement to arbitrate. That identity is not complete, however, and it is to the distinction that I now turn.

Mrs. Newton's original FINRA action was premised on two essential narratives: (1) that Ammirato's "unsuitable and reckless" decision to invest in the high-risk Champion Fund caused her and her husband to lose the vast majority of their retirement savings; and (2) that over and above the reckless investment advice, Ammirato's failure to honor the Newtons' $250,000 stop loss order[2] until the account had fallen to $60,000 and his disarming and misleading reassurances that all was well had caused the losses they suffered after their account hit $250,000. Statement of Claim (Doc. 189-3) at 2-3. In December 2011, Mrs. Newton amended her FINRA Statement to add a claim for "forgery" based on her sworn statement that a change reflected on the Newtons' NPA Account Form had been forged "to falsely reflect that Mr. Newton had changed his Risk Exposure from 'low' to 'high' on November 18, 2008." *See* Amended Statement of Claim (Doc. 189-4). For her relief on the forgery claim Mrs. Newton seeks, among other things,

---

[2] A "stop-loss" or "stop" order is an order placed with a broker to sell a security when it reaches a certain price. It is designed to limit an investor's loss on a security position. *See* http://www.investopedia.com/terms/s/stop-lossorder.asp#axzz1p7qvmhjG (visited on March 14, 2012). It is one of the myriad securities industry devices or contrivances Congress empowered the SEC and industry groups such as NASD (now FINRA) to regulate and adjudicate. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201-202 (1976)(reviewing legislative history of 1933 and 1934 Securities Acts); *National Association of Securities Dealers, Inc. v. SEC*, 431 F .3d 803, 804 (D.C.Cir.2005) (citing 15 U.S.C. § 78o–3(b)(7)).

an award of punitive damages "to deter future misbehavior." *Id.* at p. 7. After a hearing on February 27, 2012, the FINRA panel granted Mrs. Newton's request to add the forgery claim. *See* FINRA Order (attached as Ex. A to Surreply (Doc. 194)).

Mrs. Newton's claim that the high risk nature of the Champion Fund made it "unsuitable" for investment of their retirement funds is based on the same operational facts as those underlying the Champion Fund class action, namely, that the Fund's undisclosed volatility and risk caused them to lose "the vast majority" of their investment. To the extent Mrs. Newton's FINRA claims for breach of fiduciary duty, failure to supervise, respondeat superior, fraud and deceit, breach of contract, and SRO Rules violations are also based on Ammirato's investment recommendation and the losses that resulted from the volatility associated with the Fund's undisclosed high-risk investment strategy, they are precluded by operation of the Settlement Agreement and Release. Allegations that Ammirato and NPA failed to heed the Newtons' stop-loss orders and forged Mr. Newton's consent to a "high risk" investment strategy to cover their tracks are not "identical factual predicates" or common to the § 11 and 12(a)(2) claims at issue in the class action, and they are not precluded by the Release. Whether those claims state viable causes of action under New Jersey or other applicable law, or whether and to what extent Mrs. Newton is entitled to relief separate and distinct from the relief sought in the class action, are matters for the arbitrators to decide.

Based on the foregoing, Nationwide Planning and Frank Ammirato's Motion to Enforce Settlement (Doc. 177) is GRANTED in part and DENIED in part. Mrs. Newton shall cause this Order to be submitted to the FINRA arbitration panel for action consistent with it.

Dated March 15, 2012.                             **s/John L. Kane**
                                                  SENIOR U.S. DISTRICT JUDGE